## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-00583-SBP

SADIE SIRES,

      Plaintiff,

v.

MIDLAND CREDIT MANAGEMENT, INC.,

      Defendant.

---

## ORDER GRANTING SUMMARY JUDGMENT

---

**Susan Prose, United States Magistrate Judge**

      This is a case arising under the Fair Debt Collection Practices Act (the "FDCPA" or the "Act"). Through counsel, Plaintiff Sadie Sires ("Plaintiff") brings a single claim against Defendant Midland Credit Management, Inc. ("Midland"), alleging that Midland violated § 1692e and § 1692f of the Act when it misrepresented that Plaintiff owed a debt to Midland. Complaint, ECF No. 1 ¶¶ 29-35. Midland moves for summary judgment on liability, invoking the "bona fide error" defense under the FDCPA; alternatively, it seeks summary judgment on Plaintiff's claim for actual damages. *See generally* ECF No. 26 (the "Motion"). Plaintiff opposes the Motion. ECF No. 29 ("Resp."). Midland has replied. ECF No. 30. The parties have consented to magistrate judge jurisdiction (ECF Nos. 16, 17), and the court now considers the Motion pursuant to 28 U.S.C. § 636(c). For the reasons that follow, the court **GRANTS** the Motion.

*I.*    *Undisputed Facts*

      The following material facts are drawn from Midland's statement of undisputed facts.

On December 16, 2022, Midland purchased a delinquent credit card account owed by Sadie S. Stanley from Comenity Capital Bank (Zales Outlet) ("Comenity"). Declaration of Bernadette Canez, Authorized Representative for Midland, ECF No. 26-1 ¶ 4; Ex. A-1 to Canez Decl., *id*. at 5 (account information provided by Comenity to Midland).[1] This is referred to as the "Account." The information that Comenity provided to Midland stated that Sadie S. Stanley opened the Account on January 28, 2014, and that upon Midland's purchase of the Account, it had an outstanding balance in the amount of $325.99. Canez Decl. ¶ 5; Ex. A-1. The "charge-off statement" that Comenity provided to Midland stated that the amount of the Account at charge-off was $325.99. Canez Decl. ¶ 6; Ex. A-2 to Canez Decl., *id.* at 6-9 (charge-off statement from Comenity). None of the documents that Midland received from Comenity pertaining to the Account stated that it was paid off. Canez Decl. ¶ 7.

Prior to communicating with Plaintiff, Midland, per its policy, reviewed the Account to confirm the accuracy and validity of the data provided by Comenity. *Id.* ¶ 14 (referring to document bates-numbered MCM0246-64, produced by Midland).[2] That policy review included checking the data received from Comenity for any discrepancies concerning the account balance and post-charge off activity. *Id*.; *see also* ECF No. 38 at 2, Account Level Diligence and Bid Data File Review, § 3.3.4, bates-numbered pages MCM0252-53 (stating that, "[o]nce a bid file is

---

[1] There appears to be no dispute that, when Plaintiff opened the underlying account with the original creditor, she was known as Sadie S. Stanley.

[2] At the court's request (ECF No. 37), Midland filed the relevant excerpt of the referenced policy. *See* Midland Credit Management U.S. Portfolio Acquisition Policy (Effective Date October 18, 2022), ECF No. 38 (Level One restricted access). Plaintiff does not dispute that she had received this written policy in discovery, nor does she raise a genuine dispute as to the accuracy of Ms. Canez's statement that Midland followed the policy in reviewing her Account.

received, the BD Analyst performs a thorough review of *every account* within the file to confirm the accuracy and validity of the data provided by the seller") (emphasis added). In its review, Midland did not find any information which indicated that the Account information it received from Comenity was inaccurate. Canez Decl. ¶ 14 (review revealed no "data exceptions pertaining to Plaintiff's Account").

After the review had been completed, on or about December 26, 2022, Midland sent a "validation letter" to Sadie S. Stanley, which is attached as Exhibit A to the Complaint, ECF No. 1-1, and as Exhibit A-3 to the Canez Declaration. ECF No. 26-1 at 10 (12/26/2022 letter). That collection letter conveyed to Plaintiff that the Account had been sold to Midland and that, as of December 26, 2022, she owed $325.99. *Id.* Plaintiff was informed how she could dispute the debt. *Id.* On January 13, 2023, Plaintiff called Midland to discuss the Account. Canez Decl. ¶ 9. Midland subsequently sent Plaintiff two letters—one the same day as the phone call (1/13/2023 letter to Sadie S. Stanley, ECF No. 26-1 at 13-14) and the other four days later (1/17/2023 letter to Sadie S. Stanley, ECF No. 26-1 at 11-12)—which contain substantively identical information. In the January 13, 2023 letter, Midland informed Plaintiff:

> We understand that you are inquiring about or requesting documentation about the accuracy of our records concerning this account. After reviewing the information you provided, our account notes, and information provided by the previous creditor . . ., we have concluded that our information is accurate. We have also enclosed documents regarding the account. If you believe we have reached this conclusion in error, please reference the information below.
>
> * * *
>
> In order for us to further investigate your inquiry please provide the following: A copy of a paid in full or settlement letter showing the account number. If documentation is unavailable, please contact Consumer Support Services at 877-382-6063 for additional options.

ECF No. 26-1 at 13; *see also id.* at 11 (conveying substantially the same information in the 1/17/2023 letter). While Plaintiff disagrees that she had any legal obligation to provide any documentation, *see* Resp. at 4, she does not dispute the fact that this is what Midland requested.

The January 17, 2023 letter was the last letter Midland sent to Plaintiff. Canez Decl. ¶ 13. After Midland sent the January 17 letter, it received mail from Plaintiff postmarked January 25, 2023, in which Plaintiff included a page from an Experian report reflecting a zero balance for "comenityca/zalesoutlet" and noting that it had been "prepared for Sadie Sires" on January 24, 2023. *Id.* ¶ 10; ECF No. 26-1 at 17 (Experian report). *See also* ECF No. 26-1 at 15-18 (1/25/2023 mailing from Plaintiff to Midland). Plaintiff does not dispute this, but contends that she also included in the January 25, 2023 mailing a "payment history," based on the following excerpt from a document Midland produced in discovery:

| 02/02/2023 00:40 | Comment | Comment | 319549444 | svc_dm_int_api_PROD | Rcvd letter from S STANLEY rcvd in CSS 01/30/2023. PM date 01/25/2023, Address already verified, enclosed payment history, checked box other . Will remove DSPWIP, REPURCHS & CMPLNT already on account will take no further action. (Pooja Tribhuvan Pandey 2023-02-01 19:10:23) |
|---|---|---|---|---|---|

*See* Resp. at 4; *see also* ECF No. 39 at 5, "Historical Events" chart for Sadie S. Stanley, bates-number MCM0124 (Level One restricted).[3]

For purposes of evaluating the Motion, the court accepts as true Plaintiff's representation

---

[3] On the court's request, ECF No. 37, Plaintiff filed the entire document from which she excerpted this information.

that she included an unidentified "payment history" document (even though she has not made the payment history part of the record here) in her January 25, 2023 mailing to Midland. But there is no dispute that a letter from Comenity to Plaintiff dated February 12, 2023, was *not* contained in the packet Plaintiff mailed to Midland on January 25, 2023. *See* 2/12/2023 letter from Comenity to Sadie S. Sires, ECF No. 1-2; *see also* Canez Decl. ¶ 11 ("The contents of the January 25, 2023 envelope did not contain the letter found at Exhibit B to Plaintiff's Complaint, which purports to be a letter from Comenity Bank dated February 12, 2023."). The February 12, 2023 letter from Comenity to Plaintiff includes this language:

> Zero balance on your ZALES OUTLET credit card."* * * Good news! here's what we found when we checked our records: **As of 4/19/2022 your ZALES OUTLET credit card account showed a $0 balance.** Thank you for being such a responsible customer by paying off the balance.

ECF No. 1-2 (emphasis added). Midland did not receive a copy of the February 12, 2023 letter until after this lawsuit was filed on March 6, 2023—a filing that prompted Midland to ask Comenity why it had sold Midland an account with a purported balance of $325.99 in December 2022 that apparently had been paid off approximately eight months earlier. *Id.* ¶ 17 ("Midland inquired with Comenity Bank why the Account was sold to Midland with a balance of $325.99 when Plaintiff advises in her Complaint that it is paid off.").

Midland does not describe how Comenity responded, but it submits sworn testimony averring that it "was unaware that the Account had actually been paid until after this lawsuit was filed." *Id.* ¶ 16 ("Midland did not intend to collect on Plaintiff's Account when it was not actually owed, but instead relied upon information provided to it by Comenity that the $325.99 remained due and owing on the Account[.]"). Plaintiff argues that Midland knew she had paid

off the Account by February 2, 2023, as reflected in Midland's file note of that date. Resp. at 5. But, as Midland observes, Plaintiff has submitted no evidence to show that Midland was in possession of documents demonstrating that the Account was paid off "*when [Midland] communicated with Plaintiff about the Account*" in December 2022 and January 2023. *Id.* ¶ 17 (emphasis added). Plaintiff does not dispute this point, nor does she contest Midland's representation that it never reported her delinquent Account to any credit bureaus. *Id.* ¶ 15.

For her part, Plaintiff has affirmatively raised no disputed facts. She identifies a seeming contradiction between Midland's raising the bona fide error defense and its denial of one of the allegations in her complaint. *See* Resp. at 1 (labeling this as her sole "Disputed Fact"). That, however, is a legal argument—not a factual averment—that rests on an incorrect interpretation of the pleading rules, which "have for a long time permitted the pursuit of alternative and inconsistent claims." *See Boulware v. Baldwin*, 545 F. App'x 725, 729 (10th Cir. 2013); *see also* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."). This court's conclusion that Midland is entitled to summary judgment on its bona fide error defense operates to extinguish any alternative, inconsistent defense. *Boulware*, 545 F. App'x at 728-29 (after plaintiffs sought and obtained entry of judgment on one of two alternative defenses, "a binding election occurred" and the other defense was extinguished).

## II.    *Federal Rule of Civil Procedure 56*

Pursuant to Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Ordinarily, "[t]he movant bears the initial burden to show the

absence of a genuine issue of material fact. If successful, the burden shifts to the nonmovant to 'set forth specific facts showing that there is a genuine issue for trial.'" *Lazy S Ranch Props., LLC v. Valero Terminaling & Dist. Co.*, 92 F.4th 1189, 1198 (10th Cir. 2024) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). More specifically, when the moving party bears the burden of proof at trial—as Midland does on the affirmative bona fide error defense on which it seeks judgment here—"the moving party must establish, as a matter of law, all essential elements of the [affirmative defense on which summary judgment is sought] before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008); *see also Donner v. Nicklaus*, 778 F.3d 857, 876 (10th Cir. 2015) (holding that defendant seeking summary judgment on an affirmative defense must "establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case") (quotation omitted). In other words, the moving party "must support its motion with credible evidence showing that, if uncontroverted, the moving party would be entitled to a directed verdict." *Rodell v. Objective Interface Sys., Inc.*, No. 14-cv-01667-MSK-MJW, 2015 WL 5728770, at *3 (D. Colo. Sept. 30, 2015) (citing *Celotex*, 477 U.S. at 331). If the movant carries its initial burden, the burden then shifts to the nonmovant "to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial." *Adler*, 144 F.3d at 671 (quotation omitted).

A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Doe v. Univ. of Denver*, 952 F.3d 1182, 1189 (10th

7

Cir. 2020). A genuine dispute requires "more than a scintilla of evidence." *Lazy S Ranch*, 92

F.4th at 1198 (quoting *Anderson*, 477 U.S. at 252). Plaintiff, the nonmovant, must point to

competent summary judgment evidence creating a genuine dispute of material fact; conclusory

statements based on speculation, conjecture or subjective belief are insufficient. *See Bones v.*

*Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

At all times,"[i]n reviewing a motion for summary judgment, [this court] reviews the

facts and all reasonable inferences those facts support in the light most favorable to the

nonmoving party." *Univ. of Denver*, 952 F.3d at 1189 (cleaned up). This court's function on

"summary judgment is not 'to weigh the evidence and determine the truth of the matter but to

determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)

(quoting *Anderson*, 477 U.S. at 249).

III.    *Analysis*

Midland argues it is entitled to summary judgment based on its affirmative defense of a

bona fide error under the FDCPA:

> A debt collector may not be held liable in any action brought under this subchapter
> if the debt collector shows by a preponderance of evidence that the violation was
> not intentional and resulted from a bona fide error notwithstanding the maintenance
> of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). By the terms of the statute, "this affirmative defense has three

requirements: that a violation of the FDCPA was (1) unintentional, (2) a bona fide [i.e., good

faith] error, and (3) made despite procedures reasonably adapted to avoid the violation." *Lupia v.*

*Medicredit, Inc.*, 8 F.4th 1184, 1195 (10th Cir. 2021) (citing *Johnson v. Riddle*, 443 F.3d 723,

729 (10th Cir. 2006), *overruled in part on other grounds by Jerman v. Carlisle, McNellie, Rini,*

8

*Kramer & Ulrich LPA*, 559 U.S. 573, 576-77 (2010)). Midland bears the burden of proof to establish the elements of this affirmative defense. *See*, *e.g.*, *Lupia*, 8 F.4th at 1195.

As to the first element, "a violation is unintentional for purposes of the FDCPA's bona fide error defense if the debt collector can establish the lack of specific intent to violate the Act." *Johnson*, 443 F.3d at 728. Plaintiff does not dispute this element, but she does purport to dispute both the second and third elements, relying on largely the same facts and arguments for both. "Whereas the intent prong of the bona fide error defense is a subjective test, the bona fide and the procedures prongs are necessarily objective tests." *Id*. at 729. "[T]he extent to which [Midland] should have objectively realized that [its] actions were in violation . . . may be inferentially probative" of the second element, i.e., of whether the error was bona fide. *Johnson*, 443 F.3d at 729.

A.     *"Bona Fide" Element: Objectively, Should Midland Have Realized It Was Violating the Act?*

As to the "bona fide" element, Plaintiff argues Midland should have realized its actions were in violation of the Act because she informed Midland in January 2023 that she had paid off the Account, she included her credit reports in her dispute to Midland, and Midland noted on February 2, 2023 that she sent a payment history and marked the Account "to take no further action." Plaintiff argues it was unreasonable for Midland not to immediately verify the debt with Comenity when Plaintiff disputed it. These arguments are not persuasive.

First, Plaintiff's Complaint identifies only one purported violation of the Act: the December 26, 2022 letter. *See* Complt. ¶¶ 20-33; Complt. Ex. A (December 26, 2022 letter). Plaintiff does not assert, let alone provide any evidence, that *as of December 26, 2022,* her credit reports reflected that she had paid off the Account. Obviously, when Midland sent its initial

letter, Plaintiff had not yet disputed the debt to Midland and Midland could not have realized it was violating the Act.

Second, construing the Complaint more broadly to allege that Plaintiff also relies on Midland's conduct *after* its initial letter to attempt to establish a violation of the Act, the court finds no genuine dispute of a material fact that would call into question the conclusion that Midland, objectively, would not have known that any of its actions violated the Act.[4] Plaintiff's January 13, 2023 call to dispute the debt put Midland on notice that *Plaintiff* asserted she did not owe the debt, but her phone call clearly did not include any documentation in support of her contention. And while Plaintiff asserts that her credit reports would have shown at that time that she had paid off the Account, the only credit report in the record is the page of an Experian report generated *after* the call, on January 24, 2023, which Plaintiff did not mail to Midland until January 25, 2023. *See* ECF No. 26-1 at 17. And that document also erroneously shows the Comenity Account as a *"Charge off." Id.* ("Status" in the left column of "Account Info"). It does *not* show that Plaintiff paid the Account in full. This is exactly the same erroneous information that Midland had received directly from Comenity when it acquired the Account. *Id*. at 5, 6.

Plaintiff also points to Midland's February 2, 2023 internal note concerning the materials she mailed on January 25, 2023. The note reflects that Plaintiff sent, among other things, a "payment history" at that time. But the same note also reflects that, based on those materials, Midland marked the Account "*to take no further action*" on it as of February 2, 2023. ECF No.

---

[4] The court will separately address the reasonableness of Midland's procedures—in particular, its procedures for verifying the debt—in connection with its assessment of the third element of the bona fide error defense, below.

39 at 5, bates-number MCM0124.[5] Plaintiff does not dispute that Midland in fact took no further action to collect the Account after that date. Therefore, Midland's February 2, 2023 note does not reflect any conduct in violation of the Act.

Thus, the record here reveals no reason to doubt that Midland's last attempt to collect on the Account was in its letter to Plaintiff dated January 17, 2023. Plaintiff's written materials (including the "payment history" document) were not mailed to Midland until January 25 and obviously post-date the January 17, 2023 letter, as does Comenity's February 12, 2023 letter stating that Plaintiff had paid off the Account in April 2022. *See* ECF No. 1-2. Plaintiff has presented no evidence—nor could she—disputing that Midland could not have had access to those documents *before* it sent the January 17, 2023 letter. In short, she has failed to come forward with evidence sufficient to create a material fact dispute on the second element of the bona fide error defense, i.e., that Midland's error concerning the status of the Account was, objectively, a good-faith error. On the evidence presented, no rational jury could find otherwise. *See Doe*, 952 F.3d at 1189.

B.        *"Procedures" Element*

Consistent with the language of the Act, the Tenth Circuit identifies a two-step process for analyzing the procedures element of the bona fide error defense:

> The procedures component of the bona fide error defense involves a two-step inquiry: first, whether the debt collector 'maintained'—*i.e.*, actually employed or implemented—procedures to avoid errors; and, second, whether the procedures were 'reasonably adapted' to avoid the specific error at issue.

---

[5] Although the court is not obligated to comb the record, it has reviewed the entire 34-page document docketed at ECF No. 39. The court finds nothing in that document that calls into question Midland's assertion that it took no further action to collect on the Account after it sent the January 17, 2023 letter.

*Lupia*, 8 F.4th at 1195–96 (cleaned up).

The court will consider first whether Midland "actually employed or implemented" procedures to avoid errors concerning debts, and second, whether Midland's procedures were "reasonably adapted" to avoid the specific error at issue: that at the time Midland acquired the Account, it had been paid off and not "charged off" as an uncollectible debt. Because Plaintiff does not distinguish between the two steps of this element, the court will address her arguments where they most logically fit.

1. *Did Midland Actually Employ or Implement Procedures to Avoid Errors Concerning Debts?*

Midland presents, by means of Ms. Canez's declaration, sworn testimony that Midland's "Account Level Diligence and Bid Data File Review" policy is intended to avoid errors concerning the debts it collects, and that Midland followed that policy here. As described above, Ms. Canez explains that this policy requires a Midland analyst to research the debts that Midland acquires to check for any inconsistencies, including the amount owing on the accounts. She further states:

> If there are any data exceptions, they are immediately brought to the seller's attention with a request for clarification or correction of the information provided unless the data exception has been previously brought to the seller's attention and Midland has received a reasonable and approved explanation for the data exception.

Canez Decl. ¶ 14.

"[P]rocedures are processes that have mechanical or other such regular[,] orderly steps to avoid mistakes." *Lupia*, 8 F. 4th at 1197 n.5 (quoting *Jerman*, 559 U.S. at 587). Here, Midland's written procedure has regular, orderly steps (including "both automated and manual processes")

requiring research of the debts in Midland's Data Elements Template, which Midland compiled based on "state, regulatory and compliance requirements" of "the data elements [it] must obtain to evaluate and service a portfolio." ECF No. 39 at 2. And as to whether Midland actually employed or implemented this procedure with respect to Plaintiff's Account, Ms. Canez affirmatively states, under penalty of perjury, that Midland did so and "did not find any data exceptions pertaining to Plaintiff's Account." Canez Decl. ¶ 14.

Plaintiff provides no evidence to dispute Midland's evidentiary showing that it had a written procedure to avoid errors; nor does she come forward with evidence contradicting the existence of this written policy. Rather, she merely argues that Midland did not submit *evidence* of such a written procedure with the Motion. She contends that Ms. Canez's declaration does not suffice because she did not "identify a specific policy" or explain how it "was implemented or enforced to avoid such an error." Resp. at 8. The court views the record differently. Ms. Canez in fact identified the policy document by a specific bates number range of nineteen pages. Canez Decl. ¶ 14 (referencing MCM0246-64). Notably, Plaintiff does not dispute that she received the document in discovery. Ms. Canez's description of the policy is detailed and follows the actual language of the policy closely enough to allow Plaintiff to have easily located the specific document in preparing her response. Regardless, the relevant portion of the policy—which correlates with the bates numbers referenced by Ms. Canez in her declaration—now has been made part of the formal record here. *See* ECF No. 38.

Also with regard to the "actual implementation" factor, Plaintiff cites *Ozuna v. Budget Control Servs.*, No. 19-cv-02034-LTB-NRN, 2022 WL 1619684 (D. Colo. Mar. 1, 2022), for the proposition that a debt collector is not entitled to summary judgment on the bona fide error

defense when its collection representative goes "off script" in talking with the consumer about the debt. But in that case, it appears to have been undisputed that the representative did not follow the procedure on which the debt collector relied in asserting the bona fide error defense. *Id*. at *9. Here, by contrast, Plaintiff presents no evidence that Midland did not follow the procedure it identifies in support of the defense. While Plaintiff argues that Midland must not have actually researched the data, she has provided no evidence that, prior to January 17, 2023 (the date of Midland's last communication with Plaintiff) her credit reports would have shown that she had paid off the Account with Comenity or that Midland otherwise possessed documentation that she had done so. The only fact in the record here is that Comenity itself did not confirm that the debt had been paid until February 13, 2023—ten months after Plaintiff paid the debt and two months after Comenity sold the debt to Midland.

To sum up, Midland has shown that it actually implemented written procedures to avoid errors with respect to Plaintiff's Account, and Plaintiff has failed to come forward with evidence sufficient to create a genuine dispute about this material fact.

2. *Was Midland's Procedure Reasonably Adapted to Avoid the Error at Issue?*

This leaves the question of whether a rational jury could find that Midland's procedure was not reasonably adapted to avoid the specific error in this case. The court finds that a rational jury could not make such a finding.

The procedure at issue here requires that, in connection with the process of acquiring a debt portfolio, a Midland analyst must review each account in that portfolio, using both automated and manual processes, to search for any "zero balance amounts," among other discrepancies. ECF No. 38 at 3. This is the specific error that occurred with respect to Plaintiff's

Account: she had paid off the Account, such that it had a zero balance. If Midland's review had found any discrepancies (such as a zero balance on the Account), it would have contacted Comenity to resolve the discrepancy before acquiring the debt. *Id.*; *see also* Canez Decl. ¶ 14 ("If there are any data exceptions, they are immediately brought to the seller's attention with a request for clarification or correction of the information provided . . ."). And so Midland asserts that, as a matter of undisputed fact, this procedure was reasonably adapted to avoid the error that occurred in this case. Plaintiff disagrees. Her core contention is that the very existence of the error demonstrates that there is a material fact dispute about whether the procedure was reasonably adapted to avoid this error. *See* Resp. at 6-7. The court respectfully finds that the law is contrary to Plaintiff's position.

The Act requires only that a procedure be "***reasonably adapted***" to prevent the specific error at issue. It does not require an ironclad, one hundred per cent guaranty that the error will never happen. *See, e.g.*, *Reynolds v. Collectioncenter, Inc.*, No. 15-cv-01060-RPM, 2016 WL 759215, at *6 (D. Colo. Feb. 26, 2016) ("A debt collector is not required to take every conceivable effort to avoid the error."). And the Tenth Circuit has upheld a district court's decision that a debt collector like Midland receives the protection of the bona fide error defense for any error concerning the debt it has purchased where "it reasonably relied upon information from its client"—here, Comenity—"which it is permitted to do." *Solomon v. Baer & Timberlake, P.C.*, 504 F. App'x 702, 705 (10th Cir. 2012) (citing *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1177 (9th Cir. 2006) ("[I]f a debt collector reasonably relies on the debt reported by the creditor, the debt collector will not be liable for any errors."))[6]; *see also, e.g.*,

---

[6] *Solomon* is an unpublished opinion, but the court sees no reason to disagree with its analysis

*Abdollahzadeh v. Mandarich Law Group, LLP*, No. 16 CV 8682, 2018 WL 1468994, at *6 (N.D. Ill. Mar. 26, 2018) ("The mistake [the defendant debt collector] made here was relying on records [the debt buyer] received from the original creditor, which improperly used the date Abdollahzadeh made a payment that eventually bounced as the last payment date. That is precisely the type of clerical or factual mistake that the bona fide error defense is designed to protect.").

Plaintiff presents no justification for the court to adopt a different legal standard here. She chalks up the holding in *Solomon* to "mere[] dicta," arguing that the consumer in that case did not dispute the amount of the debt and only asked for a reinstatement plan. Resp. at 6. Neither contention is persuasive. In *Solomon*, the question of whether a debt collector can reasonably rely on the creditor's information concerning the amount of the debt was squarely at issue. *Id.* ("Mr. Solomon further argued that [the defendant debt collector] misrepresented the amount of the debt in its communications to him and in the foreclosure petition. The district court concluded that [the debt collector] could not be held liable for any alleged misrepresentations about the amount of the debt because it reasonably relied upon information from its client, which

---

and finds it persuasive. The court can rely on an unpublished Tenth Circuit opinion to the extent that its reasoned analysis is persuasive in the case before it. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005) ("In this circuit, unpublished orders are not binding precedent and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.") (cleaned up); *see also* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The court concludes that *Solomon* has persuasive value with respect to a material issue here and that it will assist the court in its disposition of the Motion.

it is permitted to do.") (cleaned up). Thus, even if Plaintiff here had articulated a meaningful difference between disputing the amount of a debt and asking for a reinstatement plan, the consumer's claim in *Solomon* was not limited to his request for a reinstatement plan; he also asserted that the debt collector had misrepresented the amount due, much as Plaintiff does in this case.

The other cases on which Plaintiff relies do not support the proposition that Midland's policy was insufficient. She argues that *Lupia v. Medicredit, Inc.*, 8 F.4th 1184 (10th Cir. 2021), held that, if a debt collector's procedure did not prevent the error, the procedure does not suffice to invoke the bona fide error defense. Resp. at 4. *Lupia* did not make such a sweeping holding.

In *Lupia*, the Tenth Circuit found that a particular procedure was not reasonably adapted to avoid the specific error at issue—calling a consumer who had requested in writing that their communications cease—because the company allowed itself "up to three business days of lag time between its receipt and processing of mail." *Lupia*, 8 F.4th at 1188. During that lag time, the debt collector could still make calls to the consumer, despite the FDCPA's requirement that such communications stop immediately upon the collector's receiving a consumer's request to cease. *Id*. at 1197. The three-business-day interval for processing mail compared "poorly" to other debt collectors' practices. *Id*. Critically, too, the debt collector had denied in discovery that it had any mail processing policies, and it "wasn't until after the district court granted summary judgment for [the consumer] that [the debt collector] submitted evidence of the specifics of its mail policies." *Id*. at 1196. And so it was not the fact of the error which made the debt collector's procedure fail the third element of the bona fide error defense; it was the debt collector's failure to timely present any evidence to establish why its procedure (and in particular, the lag time in

17

processing its mail) was necessary and reasonably adapted to avoiding the error at issue. Neither

is the fact that Midland erred in attempting to collect a debt that Plaintiff actually did not owe

sufficient to create a genuine dispute about whether Midland's procedure was reasonably adapted

to avoid that error. Were the rule otherwise, the bona fide error defense would be effectively

eviscerated.

The court also does not find that the holding in *Edwards v. BC Services, Inc.*, No. 18-cv-

03322-STV, 2019 WL 6726232 (D. Colo. Dec. 10, 2019), undermines Midland's entitlement to

summary judgment. *See* Resp. at 4-5 (discussing *Edwards*). In *Edwards*, the court rejected the

argument that a debt collector could avoid FDCPA liability exclusively by relying on

information provided by the original creditor, without the need to establish the elements of a

bona fide error defense. *Id.* at *5-6 (agreeing that "a debt collector's reasonable reliance on

information provided by a creditor alone is insufficient to protect it from liability under the

FDCPA," and finding that "to the extent Defendant seeks to rely upon its purportedly reasonable

reliance on information provided to it by CIA to avoid FDCPA liability, Defendant must

establish a bona fide error defense") (collecting cases). Here, though, the undisputed facts show

that Midland relied not only on the information provided by Comenity, but also on searches of its

own "Data Elements Template," *see* ECF No. 38 at 2—a fact that sharply distinguishes the

instant situation from that before the court in *Edwards*.

Furthermore, unlike the defendant in *Edwards*, Midland has not sought to evade its

obligation to satisfy the elements of the bona fide error defense. *See Edwards*, 2019 WL 672623,

at *6 (noting that "Defendant fails to cite any record evidence to support [the] contention" that it

maintained the procedures it claimed to have). The defendant in *Edwards* was not entitled to

18

summary judgment on the bona fide error defense—a defense which it did not specifically invoke and the elements of which it failed to establish—because the record evidence was "insufficient to establish, as a matter of law, that Defendant actually employed or implemented procedures to avoid errors and that any such procedures were reasonably adapted to avoid attempts to collect a debt[.]" *Id.* at *5. Not so here, where Midland has presented specific, uncontroverted evidence that it actually employed and implemented the requisite reasonable procedures.

Finally, the court addresses Plaintiff's argument that Midland was required to contact Comenity immediately after Plaintiff contacted Midland on January 13, 2023, to verbally dispute the debt. *See* Resp. at 1. In other words, according to Plaintiff, unless Midland's procedures included calling or emailing the original creditor immediately upon a consumer's verbal dispute, a rational jury could find that those procedures were not reasonably adapted to avoid the specific error in this case. But Plaintiff cites no authority requiring a debt collector to directly, immediately contact the original creditor after a debtor disputes a debt telephonically. Nor is this court aware of any such authority. Rather, the Act requires the debt collector to verify a debt only after the consumer timely disputes a debt "*in writing:*"

> If the consumer notifies the debt collector *in writing* within the thirty-day period . . . that the debt or any portion thereof, is disputed, . . . the debt collector shall cease collection of the debt . . . until the debt collector obtains verification of the debt . . . and a copy of such verification . . . is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b) (emphasis added). Plaintiff did not dispute the debt **in writing** until January 25, 2023, and Midland's only debt collection conduct after her phone call of January 13, 2023, was to issue the letters of January 13 and 17, 2023. Plaintiff has come forward with no

19

evidence purporting to dispute Ms. Canez's sworn testimony that Midland took no further action to collect on the Account after the issuance of the January 17, 2023 letter.

In sum, Midland has presented sufficient evidence to establish the "procedures" element: that it maintained and applied a procedure to avoid errors concerning the amount of the debt, and that the procedure it employed was reasonably adapted to avoid the specific error in this case. There is no genuine dispute about those material facts. Plaintiff has presented no evidence to the contrary, and its legal arguments are likewise unsupported.

*   *   *

Midland has presented facts supporting each element of the bona fide error defense, obliging Plaintiff to bring forward specific facts to rebut Midland's case. *See Pelt*, 539 F.3d at 1280. She has not done so.

Accordingly, the court finds that Midland has satisfied its burden of "demonstrat[ing] that no disputed material fact exists regarding the [bona fide error] affirmative defense." *See Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). The Motion is **GRANTED** to the extent it seeks summary judgment in favor of Midland on Plaintiff's FDCPA claim. And because undisputed facts establish Midland's entitlement to a bona fide error defense—and Midland therefore is exempt from FDCPA liability—the court does not reach Midland's argument in the alternative concerning the portion of Plaintiff's claim for actual damages. *See* Motion at 9-10.

IV.   *Conclusion*

Midland's Motion (ECF No. 26) for Summary Judgment is **GRANTED**. The trial set to begin on July 29, 2024, is **VACATED**. Judgment for Defendant Midland Credit Management, Inc., shall enter accordingly.

DATED: May 20, 2024                                            BY THE COURT:

_____
Susan Prose
United States Magistrate Judge